# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| **CASE NUMBER** | 01 C 363 | **DATE** | 3/15/2001 |
| **CASE TITLE** | Complete Business Solutions vs. Mauro | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Counts three and five of CBSI's Complaint are dismissed without prejudice. Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiff's Verified Complaint for Injunctive and Other Relief (7-1) is granted in part and denied in part. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 16 2001 | |
| | Notified counsel by telephone. | | date docketed | 14 |
| X | Docketing to mail notices | | C.S. | |
| | Mail AO 450 form. | | docketing deputy initials | |
| X | Copy to judge/magistrate judge. | | 3/15/01 | |
| | | ⑩ CD-7 FILED FOR DOCKETING 01 MAR 15 PM 4: 39 | date mailed notice | |
| *VKD* | courtroom deputy's initials | | vkd | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 16 2001

COMPLETE BUSINESS SOLUTIONS, )
INC., a Michigan Corp. )
)
          Plaintiff, )   No. 01 C 0363
)
   v. )
)   Magistrate Judge
PETER MAURO, an Individual, )   Arlander Keys
and ENCORE CONSULTING )
SERVICES, INC., )
an Illinois Corp. )
)
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Plaintiff's five-count Complaint alleges various breaches of contract, tort, and violations of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1, *et seq*. (West 2001), and seeks preliminary and permanent injunctive relief and monetary damages. For the following reasons, Defendants' Motion is granted in part, and denied in part.

## BACKGROUND

For purposes of a motion to dismiss, the Court accepts all well-pleaded allegations in the complaint as true. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th

Cir. 1996). Plaintiff, Complete Business Solutions, Inc. ("CBSI")
is a Michigan corporation with its principal place of business in
Farmington Hills, Michigan. (Complaint ¶ 4.) CBSI is a business
and information technology consulting company specializing in
global systems integration, reengineering, and staff augmentation.
(*Id.* at ¶ 7.) Of CBSI's approximately 5500 employees worldwide and
3800 in the United States, 400 are based in Chicago. (*Id.*)
Indeed, Chicago is CBSI's largest market area, accounting for over
$35 million in annual revenue through roughly 50 customers. (*Id.*)

Defendant Peter Mauro is a citizen of the State of Illinois,
and Defendant Encore Consulting Services, Inc. ("Encore") is an
Illinois corporation with its principal place of business in
Illinois. (Complaint ¶¶ 5-6.) Mr. Mauro was formerly employed by
C.W. Costello & Associates, Inc. ("CWC"), then a Connecticut
corporation, for whom he served as Regional Manager for the Chicago
region. (*Id.* at ¶ 12.) In March 1998, CBSI purchased the stock
of CWC, and Mr. Mauro became a CBSI employee and continued to work
for CBSI in its Chicago office. (*Id.* at ¶ 14.) In February 2000,
Mr. Mauro resigned from CBSI, but before resigning, he and CBSI
entered into a "Separation Agreement and General Release"
(hereinafter referred to as the "Agreement"). (*Id.* at ¶ 17.)

In the Agreement, in exchange for a severance payment and other consideration, Mr. Mauro agreed to the following, in pertinent part:

**Confidentiality and Professionalism.** Employee acknowledges that during the course of Employee's employment with the Company, Employee may have been exposed to Trade Secrets and Confidential Information of the Company. [E]mployee agrees that Employee will not use or disclose any Trade Secret or Confidential Information . . . for twelve (12) months following his employment termination date.

**Non-Solicitation of Clients Covenant.** For a period of one (1) year following his employment termination date, Employee will not, directly or indirectly, on Employee's own behalf or in the service of or on behalf of any other individual or entity, divert, solicit or attempt to divert or solicit any individual or entity to provide services or products to such individual or entity that are substantially similar to those provided by the Company, if such individual or entity:

(i) is or was a client of Company at any time during the twelve (12) month period prior to Employee's termination date, and with respect to whom Employee had contact in a business (as opposed to social) setting or context during said twelve (12) month period, provided, however that this prohibition shall not apply with respect to a client who is not a client as of Employee's employment termination date and has informed Company that it no longer desires to employ Company to provide any further services; or

(ii) is or was a client of Company at any time during the twelve (12) month period prior to Employee's employment termination date, and whose projects Employee reviewed during such period . . . .;

(iii) was not a client of Company during the twelve (12) month period prior to Employee's termination date; but was actively sought by Company during that period as a prospective client and with respect to whom during that period and in connection with such efforts Employee participated in presenting the

Company's credentials.

**Remedies for Breach**. Employee acknowledges that great loss and irreparable damage would be suffered by the Company if Employee should breach or violate the terms of this Agreement. In the event Employee breaches or violates any provisions of this Agreement, the parties agree that the Company would not have an adequate remedy at law and that, therefore, the Company will be entitled to a temporary restraining order and a permanent injunction to prevent a breach of any of the terms or provisions contained in this Agreement, in addition to any other available remedies.

(*Id.* at ¶ 18.)

After resigning from CBSI, Mr. Mauro went to work for Encore, where he is currently its President and CEO. (*Id.* at ¶ 19.) At the time Mr. Mauro resigned from CBSI, CBSI was performing consulting services for clients Ameritech and Boise Cascade. (*Id.* at ¶ 20.) Furthermore, while employed by CBSI, Mr. Mauro worked with these clients (*id.* at ¶ 15), and was (and is) well aware of CBSI's past and present relationships with them. (*Id.* at ¶ 21.)

In late 2000, CBSI's management obtained a solicitation letter that Mr. Mauro had sent to Ameritech. (*See* the "Letter", attached to Complaint as Exhibit B.) Apparently, in this Letter, Mr. Mauro had used a CBSI employee as a reference, and even emphasized that he had worked with Ameritech while employed by CBSI. (*Id.*) Mr. Mauro then proceeded to offer Encore's consulting services to Ameritech. (*Id.*) Significantly, the services offered

-4-

in the Letter to Ameritech were services that CBSI performs on a regular basis. (Complaint ¶ 22.) Mr. Mauro began this Letter by stating that "[i]t's [sic] been five months since I last dropped you a line in May of this year." (Complaint, Ex. B.) Based on the content of this Letter, CBSI began to investigate Mr. Mauro's conduct, and learned that Mr. Mauro had also solicited Boise Cascade.[1] (Complaint ¶ 23.)

On January 18, 2001, CBSI filed a five-count Complaint in federal court[2] to enforce the non-solicitation and confidentiality

---

[1] Pursuant to the Agreement, Mr. Mauro's employment with CBSI terminated as of February 18, 2000. (*See* ¶ 2 of Agreement, attached to Complaint as Exhibit A.) Therefore, the confidentiality and non-solicitation provisions of the Agreement – which were to last 12 months – would have expired on February 18, 2001. Plaintiff learned of Mr. Mauro's conduct in late 2000, and filed its Complaint on January 18, 2001. On January 29, 2001, Plaintiff filed its motion for a preliminary injunction. Plaintiff requests, in addition to other relief, that Mr. Mauro be restrained or enjoined from soliciting or performing work for CBSI's clients, including Ameritech and Boise Cascade, with whom Mr. Mauro had contact in a business setting, or for whom he reviewed projects, during his last twelve months at CBSI (i.e. from February 18, 1999 to February 18, 2000), for twelve months from the date of the Court's order. (*See* Compliant at ¶ 87.) In other words, although CBSI learned of Mr. Mauro's alleged breach of the Agreement in late 2000 - months before the confidentiality and non-solicitation provisions of the Agreement were to expire – CBSI essentially requests (because of Defendants' alleged breaches) that the twelve month duration requirement begin again with the Court's order.

[2] The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

provisions contained in the Agreement, as well as to prevent the tortious interference with contractual and business relationships by Mr. Mauro and Encore. Count one, directed at Mr. Mauro, alleges breach of contract of the non-solicitation provisions of the Agreement. Count two, directed at Mr. Mauro, alleges breach of contract of the non-disclosure and non-use provisions of the Agreement. Count three, directed at Mr. Mauro, alleges violations of the ITSA; court four, directed at Defendant Encore, alleges interference with contract. Finally, count five, directed at both Defendants Mr. Mauro and Encore, alleges interference with business relations and prospective business relations. Defendants filed their Motion to Dismiss, the present Motion before the Court, on February 2, 2001.[3] For the following reasons, counts three and five are dismissed without prejudice, and the Motion with respect to counts one, two and four is denied.

---

[3] On February 2, 2001, when Defendants filed their Motion to Dismiss, they attached Mr. Mauro's affidavit contesting various factual allegations contained in the Complaint. At a status hearing on February 12, 2001 before this Court, Defendants' counsel withdrew Mr. Mauro's affidavit. Accordingly, the Court will not be considering Mr. Mauro's affidavit, or any references to it or arguments based upon it, in ruling on Defendants' Motion to Dismiss. *See, e.g., Automated Concepts Inc. v. Weaver*, No. 99 C 7599, 2000 WL 1134541, at * 3 (N.D. Ill. Aug. 9, 2000)(holding that, in a motion to dismiss, the court may not rely upon affidavits or other materials addressed to the truth or falsity of plaintiff's factual assertions)(citation omitted).

## STANDARD FOR MOTION TO DISMISS

Defendants' Motion, which is brought solely pursuant to Federal Rule of Civil Procedure 12(b)(6), alleges that CBSI has failed to properly plead claims against Defendants for which relief may be granted. The purpose of a 12(b)(6) motion to dismiss, for failure to state a claim upon which relief can be granted, is to test the sufficiency of the complaint. *Chicago Dist. Council of Carpenters Pension Fund v. G & A Installations, Inc.*, No. 95 C 6524, 1996 WL 66098, at *1 (N.D. Ill. Feb. 8, 1996). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pled factual allegations in the complaint, and draws all reasonable inferences therefrom in the plaintiff's favor. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1343 (7th Cir. 1995). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)(citation omitted). However, a complaint must sufficiently allege facts which set forth the essential elements of the cause of action. *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir. 1988). Therefore, the plaintiff's complaint must comply with Rule 8(a) of the Federal Rules of Civil

Procedure by setting out "a short and plain statement of the claim showing that the pleader is entitled to relief." *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734 (7th Cir. 1994).

## DISCUSSION

Because this is a diversity action, the Court must assess the adequacy of the pleadings under federal law, rather than the stricter requirements of fact pleading under Illinois law. *Ganton Technologies, Inc. v. Quadion Corp.*, 755 F. Supp. 203, 207 (N.D. Ill. 1990). As long as Defendants are on sufficient notice of the nature of the claim, Plaintiff has satisfied federal notice pleading requirements. *Id.* With these principles in mind, the Court turns to the five counts in Plaintiff's Complaint.

## I.    Counts One and Two: Breach of Contract[4]

Counts one and two adequately state claims for breach of

---

[4] Although Defendants group Count II (breach of the non-use and non-disclosure provisions) and Count III (violations of the ITSA) together in arguing that they should be dismissed, the Court finds that Count II is essentially a breach of contract claim, and therefore is more analogous to Count I. Furthermore, as explained in more detail *infra*, while failure to plead that Mr. Mauro actually used confidential information is critical to CSBI's claim under the ITSA, it is not critical to its breach of the non-use and non-disclosure provisions of the Agreement, which is essentially a breach of contract claim.

contract under Illinois law.[5]    A plaintiff must allege the following elements in order to state a claim for breach of contract under Illinois law: (1) the existence of a valid contract; (2) performance by plaintiff; (3) breach of contract by defendant; and (4) resultant injury to plaintiff. *Arifin v. Schude*, No. 98 C. 1591, 1999 WL 342395, at * 5 (N.D. Ill. May 14, 1999).  With respect to counts one and two – breach of the non-solicitation, non-use and non-disclosure provisions in the Agreement – CBSI has alleged that (1) upon Mr. Mauro's separation from CBSI, CBSI and Mr. Mauro entered into a valid and binding agreement under Illinois law (which contained non-solicitation, non-use, and non-disclosure provisions) (Complaint ¶¶ 17-18); (2) CBSI paid a lucrative severance and other consideration under the Agreement (Complaint ¶ 18); (3) Mr. Mauro breached the Agreement (Complaint ¶¶ 22-23, 25-26, 29, 32); and (4) CBSI has been and will be injured by the breach (Complaint ¶¶ 30-32, 35, 40).

Defendants argue that CSBI has failed to plead a particular factual allegation, namely that Mr. Mauro had contact with a CBSI customer between February 18, 1999 and February 18, 2000.  More

---

[5] In a diversity action, the Court applies the substantive law of the forum state. *Sanders v. Franklin*, 25 F. Supp.2d 855, 858 (N.D. Ill. 1998).  Furthermore, both parties acknowledge that Illinois law applies to the Agreement.

specifically, Defendants contend that CBSI fails to allege that Mr. Mauro had contact with either Ameritech or Boise Cascade for the twelve months prior to his resignation. Defendants are correct that merely soliciting Ameritech or Boise Cascade, and competing directly with CBSI, does not automatically constitute a breach of the Agreement, because the Agreement contains a temporal fix (12 months). Indeed, as CBSI points out, the nature and frequency of Mr. Mauro's contact with CBSI's clients during the final year of his employment may well be a disputed fact issue in this litigation. Nonetheless, the Federal Rules of Civil Procedure do not require particular facts to be alleged in the complaint. *Arifin*, 1999 WL 342395, at * 5. In this respect, the reasoning in *Morris v. Katz*, No. 97 0657, 1988 WL 107321, at * 2 (N.D. Ill. Oct. 5, 1988)(citations omitted)(emphasis added) is particularly instructive:

> In an action for breach of contract, the plaintiff must allege the formation of the contract, the terms of the alleged contract, that the plaintiff has performed his contractual obligations, that the defendant has breached the contract and that the plaintiff has been damaged. ***Plaintiff need not allege all of the specific, relevant facts pertaining to the alleged contract.*** The FRCP do not dictate that plaintiff is required to plead with more particularity. ***Mere failure to allege more specific information does not warrant dismissal of the complaint.***

On a motion to dismiss, the relevant inquiry is not whether the

plaintiff will ultimately prevail, but whether the plaintiff could prove a set of facts that would entitle him to relief. *Id.* Indeed, the Seventh Circuit has stated that "a complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)(citation omitted). In the case *sub judice*, Defendants are certainly put on sufficient notice of CBSI's breach of contract claim for non-solicitation (Count I), as well as its claim for breach of the non-use and non-disclosure provisions (Count II). Therefore, resolution of these issues through a Rule 12(b)(6) motion is inappropriate.

## II. Count Three: Violations of the Illinois Trade Secrets Act

In order to state a claim for misappropriation under the ITSA, a plaintiff must plead that the information at issue was (1) a trade secret; (2) misappropriated; and (3) used in defendant's business. *Abbott Laboratories v. Chiron Corp.*, 97 C 0519, 1997 WL 208369, at * 3 (N.D. Ill. April 23, 1997)(citation omitted). A trade secret is information "that (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use and (2) is the subject of efforts that are

reasonable under the circumstances to maintain its secrecy or confidentiality." *Id.*; citing 765 ILCS § 1065/2(d).

Although Defendants argue that CBSI merely asserts, in a conclusory fashion, that it has trade secrets, the Court finds that CBSI has adequately pled that it has confidential information and trade secrets. Indeed, the Complaint clearly alleges that, while employed by CBSI, Mr. Mauro had access to CBSI's most valuable and sensitive information, including case and client studies, customer and employee lists, market analyses, gross margins, marketing materials, pricing lists, technological research reports, and client process and operation data, all of which was confidential. (Complaint ¶ 24.) Furthermore, the Complaint alleges that CBSI goes to great lengths to ensure that this material remains confidential by requiring its employees to sign non-disclosure agreements and by maintaining a company-wide limited access policy. (*Id.*) The Court finds that CBSI has adequately pled that the information at issue is a trade secret.[6]

---

[6] CBSI cites *Stampede Tool Warehouse, Inc. v. May*, 651 N.E.2d 209 (Ill. App. Ct. 1995) and *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995) for the proposition that customer lists, advertising, pricing, marketing and distribution information may be information that constitutes a trade secret. Defendants argue that these cases do not stand for the proposition that *every time* an employer has this information, it

(continued...)

-12-

Nonetheless, the Court agrees with Defendants that CBSI has failed to adequately plead that Mr. Mauro *actually used* trade secrets in its solicitation of CBSI's clients. Rather, CBSI essentially alleges that Mr. Mauro, who possesses CBSI's confidential and proprietary information, *could* misuse the information, and that CBSI fears that he will.[7] *See Abbott*

---

[6](...continued)
is truly confidential and a trade secret. While this is undoubtedly true, it is irrelevant on a motion to dismiss, where the Court must accept Plaintiff's well-pled allegations as true. In other words, whether CBSI's customer lists, etc., are truly trade secrets under the ITSA will be borne out at a later phase in this litigation. *See, e.g., Strata Marketing, Inc. v. Murphy,* 740 N.E.2d 1166, 1176-77 (Ill. App. Ct. 2000)(finding that plaintiff pled sufficient facts to withstand motion to dismiss in connection with alleging the existence of trade secrets and reasonable efforts to protect them, where at least some of the information plaintiff argued constituted a trade secret had been held to be a trade secret in other cases).

[7] Specifically, the Complaint generally states, in conclusory fashion, that "Mauro has used and/or will necessarily be called upon to use and disclose such information in improperly soliciting Ameritech." (Complaint ¶ 26.) Despite this conclusion, there are no factual allegations that Mr. Mauro has, in fact, used trade secrets. *See Magellan Intern. Corp. v. Salzgitter Handel GmbH*, 76 F. Supp.2d 919, 927 (N.D. Ill. 1999)(finding that, where plaintiff alleged that "its trade secrets have been or will be misappropriated", this failed to state a claim of threatened or actual misappropriation under the ITSA, where the complaint failed to state that defendant had "in fact used or threatened to use the asserted trade secrets . . ."). As explained *infra*, CBSI's argument is essentially one of "inevitable disclosure." The Complaint further states, under the specific count for violations of the ITSA, that "Mauro's access

(continued...)

-13-

*Laboratories, supra,* 1997 WL 298369, at * 3 (finding plaintiff's allegations of trade secret misappropriation deficient in part, because plaintiff essentially alleges that defendants could misuse trade secrets and plaintiffs fear they will); *Magellan Intern. Corp., supra,* 76 F. Supp.2d at 927 (same); *Teradyne, Inc. v. Clear Communications Corp.,* 707 F. Supp. 353, 357 (N.D. Ill. 1989)("All that is alleged, at bottom, is that defendants could misuse plaintiff's secrets, and plaintiffs fear they will.  This is not enough.  It may be that little more is needed, but falling a little short is still falling short.")

CBSI argues that it has alleged that Mr. Mauro will "inevitably use" such trade secrets and confidential information in directly competing with CBSI.  While the Seventh Circuit has recognized the doctrine of "inevitable disclosure" (*see PepsiCo, Inc., supra,* 54 F.3d at 1269-70 (holding that, in working for a

<hr />

[7](...continued)
to CBSI's trade secrets, coupled with his post-employment soliciting of CBSI's clients, evidences his disclosure and/or use, or inevitable disclosure and/or use, of CBSI's trade secrets . . ." (Compliant ¶ 56.)  Again, CBSI does not satisfactorily allege that Mr. Mauro has, *in fact*, used trade secrets in his solicitation of Ameritech or other CBSI's clients.  Merely soliciting clients – even in violation of the Agreement – does not automatically show that Mr. Mauro has *actually* divulged confidential trade secrets in violation of the ITSA.

competitor, defendant would inevitably rely upon plaintiff's trade secrets, because defendant could not help but use the information "unless [defendant] possessed an uncanny ability to compartmentalize information . . .")), as Defendants point out, it is unclear to the Court how this doctrine applies to the case *sub judice*. In cases that have successfully applied the "inevitable disclosure" doctrine, the employee had agreed that he would not compete with his former employer for a fixed period of time, and the court found that the defendant "could not operate or function without relying on [plaintiff's] alleged trade secrets." *Strata Marketing*, *supra*, 740 N.E.2d at 1179. But, in the case at bar, CBSI agreed that Mr. Mauro can solicit any CBSI clients and can even compete with CBSI, provided that Mr. Mauro had no contact with the client from February 18, 1999 to February 19, 2000.[8]

---

[8] In *Strata Marketing* – a case that CBSI relies on to argue the applicability of the inevitable disclosure doctrine - the defendant agreed not to provide services to any business that was a competitor of plaintiff's for one year following defendant's termination. 740 N.E.2d at 1169. Furthermore, in *PepsiCo*, the defendant employee had signed a confidentiality agreement (but no non-compete or non-solicitation agreement), and the court found that the plaintiff had proved that the defendant employee could not help but rely on the plaintiff's trade secrets because of the high level nature of his job. Here, the case is *inapposite*, because clearly Mr. Mauro can compete with CBSI without having to disclose trade secrets, as the Agreement affirmatively allows Mr. Mauro to immediately compete with CBSI and solicit its clients,

(continued...)

Furthermore, even if the inevitable disclosure doctrine could apply to these facts (the Court has its doubts), CBSI has failed to properly plead that Mr. Mauro will "inevitably" use CBSI's confidential information. In *Teradyne, supra*, the court refused to apply the inevitable disclosure doctrine, because the plaintiffs had failed to allege that the defendants, in fact, threatened misappropriation, or that it was inevitable that they would do so. 707 F. Supp. at 356. "An allegation that the defendants said they would use secrets or disavowed their confidentiality agreements would serve this purpose. An allegation that [defendant] could not operate without [plaintiff's] secrets . . . would suffice . . . ." *Id.* As in *Teradyne*, the Court finds that CBSI has failed to satisfactorily allege a violation of the ITSA.

Nonetheless, the Court grants the motion to dismiss Count III without prejudice. If CBSI can, in good faith, amend its Complaint to allege that Mr. Mauro actually used trade secrets in soliciting CBSI's clients, that he disavowed the confidentiality provisions of the Agreement, or that he cannot operate without inevitably

---

[8](...continued)
as long as Mr. Mauro had no contact with the clients for a one-year period prior to his resignation. *See also Magellan Intern. Corp., supra*, 76 F. Supp.2d at 927 (stating that, even when a defendant is in possession of secret information, disclosure of that information is not inevitable) (citation omitted).

disclosing the confidential information, then it may do so. The Court points out, however, that it has serious doubts that the inevitable disclosure doctrine applies to the facts of this case, where Mr. Mauro is allowed under the Agreement to solicit and compete with CBSI. If CBSI decides to amend its Complaint to argue "inevitable disclosure" (as opposed to actual misappropriation), it should keep this caveat in mind.

## III. Count Four: Interference with Contractual Relations

CBSI has satisfactorily alleged a claim for interference with contractual relations. Under Illinois law, the five essential elements to establish a *prima facie* claim for tortious interference with contractual relations include: (1) the existence of a valid and enforceable contract between plaintiff and another party; (2) that the defendant was aware of the contractual relationship; (3) an intentional and unjustified inducement of a breach of the contract by the defendant; (4) the subsequent breach of the contract by the other party, caused by defendant's inducement; and (5) damages. *Fine Line Distributors, Inc. v. Rymer Meats, Inc.*, 93 C 5685, 1994 WL 282299, at * 2 (N.D. Ill. June 22, 1994) (citation omitted).

In the case *sub judice*, CBSI has alleged that CBSI has an existing Agreement with Mr. Mauro, where Mr. Mauro is contractually

-17-

obligated not to solicit certain CBSI clients and not to divulge or use CBSI's confidential or proprietary information. (Complaint ¶¶ 17-18, 64-65.) Encore is fully aware of this Agreement between Mr. Mauro (its President and CEO) and CBSI, as well as the Agreement's contractual obligations. (*Id.* at ¶ 66.) In marketing or performing services for CBSI clients, including Ameritech, Mr. Mauro has breached the Agreement. (*Id.* at ¶¶ 23, 29, 65.) Encore was aware that, by having Mr. Mauro solicit certain CBSI's clients, it instigates Mr. Mauro's aforementioned breaches of the Agreement. (*Id.* at ¶ 67.) CBSI has been and will be damaged by Encore's conduct. (*Id.* at ¶ 70.) Accordingly, based on federal pleading standards, CBSI has satisfactorily stated a claim for tortious interference with contractual relations.[9]

## IV. Count Five: Interference with Prospective Economic Advantage

CBSI has failed to adequately plead that Defendants tortiously

---

[9] Defendants argue that CBSI has failed to allege that Encore "unjustifiably" induced the breach, and only alleged that Encore "intentionally interfered" with the Agreement. While CBSI did not use the word "unjustifiably" in its Complaint, under the liberal pleading requirements, this is not fatal to its claim. Indeed, CBSI provides enough inferential allegations to support its theory that Encore's inducement was unjustified, and clearly alleges sufficient facts to outline its cause of action. *See Davis v. Frapolly*, 747 F. Supp. 451, 452 (N.D. Ill. 1989) ("The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory.")

interfered with CBSI's economic advantage. Under Illinois law, the essential elements for this claim are: (1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from being fulfilled; and (4) damages to the plaintiff resulting from the defendant's interference. *Fine Line Distributors, Inc., supra,* 1994 WL 282299, at * 4. While CBSI adequately pleads elements one, two and four, it has not pled element three: that a business expectancy *has not been fulfilled,* or as Defendants articulate, that a business relationship failed to materialize. *See id.* ("Nowhere in the complaint does plaintiff take the necessary step of identifying any individuals or companies *who refused to do business* with plaintiff because of defendants' alleged interference . . . .")(emphasis added).

In the case at bar, CBSI has not only failed to allege that a CBSI client, such as Ameritech or Boise Cascade, has refused to do business with CBSI, but has even alleged that it is currently still doing business with Ameritech and Boise Cascade. Paragraph 20 of the Complaint states: "At the time Mauro resigned from CBSI, CBSI

was performing consulting services for Ameritech and Boise Cascade, and *continues to do so*." (Emphasis added.) Therefore, reading the Complaint in its entirety, it is not clear that a business expectancy has failed to materialize with one of CBSI's clients.

Nonetheless, the Court will, again, dismiss this count without prejudice. If CBSI can allege, in good faith, that, because of Defendants' conduct, a business expectancy has, in fact, failed to materialize with one of its clients, then it may amend its Complaint. If not, then CBSI must drop this count.[10]

## CONCLUSION

For the reasons set forth above, counts three and five of CBSI's Complaint are dismissed without prejudice. Counts one, two and four have satisfactorily stated a claim for relief. Accordingly, Defendants' Motion is granted in part and denied in

---

[10] Defendants argue that the counts in the Complaint should be dismissed *with* prejudice, because CBSI could have amended its Complaint but chose not to. Therefore, Defendants maintain that CBSI has essentially exhausted its opportunity to amend its Complaint, and they cite *Peaceful Family Limited Partnership v. Van Hedge Fund Advisors, Inc.*, No. 98 C 1539, 1999 U.S. Dist. LEXIS 1838, at * 27-28 (N.D. Ill. Feb. 19, 1999) for this proposition. However, in *Peaceful Family Limited Partnership*, the plaintiffs had actually amended their complaint three times before the court refused a fourth opportunity. In the case at bar, CBSI is on its original Complaint. The Court finds that CBSI should be given an opportunity to amend its Complaint, if it can, in good faith, correct the deficiencies discussed *supra*.

-20-

part.

IT IS THEREFORE ORDERED that:

Defendants' Motion to Dismiss be, and the same hereby is, GRANTED IN PART, and DENIED IN PART.


Dated:  March 15, 2001          ENTER:

_____
ARLANDER KEYS

United States Magistrate Judge